**STATE ex VAN BUREN TWP. BD. OF ED. v OAKWOOD CITY BD OF ED.**

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1467. Decided Dec. 30, 1939

Knepper, White & Dempsey, Columbus; E. E. Duncan, Dayton, for relator.
Matthews & Matthews, Dayton; Smith, Schnacke & Compton, Dayton, for respondents.

## OPINION

By GEIGER, J.

This is an original action in this court, being a proceeding in mandamus to require the respondents to assume, levy and tax for payment and to pay certain indebtedness growing out of the transfer of territory from the Van Buren Township Rural School District to the Oakwood City School District by certain annexation proceedings.

The petition, after reciting the identity of the parties, alleges that prior to July 8, 1926, the Van Buren Township Rural School District consisted of territory within the limits of Van Buren Township, except portions detached or attached for school purposes; that the property within the school district had a total tax value of $18,342,000.00; that on the 8th of July, 1926, the Village of Oakwood annexed certain portions of Van Buren Township contiguous to said village and that the property within such annexed territory became, by operation of law, a part of Oakwood Village School District, the property so annexed having a total valuation for taxation of $2,579,410; that prior to July 8, 1926, the Van Buren Rural School District had issued bonds, so that on that date its indebtedness was $714,971.00; that by such annexation, Oakwood Village School District obtained 14.06% of the taxable property theretofore belonging to the Van Buren Rural School District and that the Oakwood Village School District was compelled by law to assume and pay 14.06% of the indebtedness, amounting to $100,525.02 and was compelled by law, and should have levied an annual tax for the payment of the same.

It is further alleged that on November 6, 1936, under the provisions of §274 et seq GC, a state examiner made an examination and filed a report, which report is set out in the petition. The tabulation contains information as to the value of the property originally in the district and the value of the property transferred; the total indebtedness and the amount resulting from the 14.06% as Oakwood's share. The report sets out the total as being past due, as well as a tabulation of the bonds coming due up to and including 1950. It is alleged that immediately after the 8th of July, 1926, the Board of Education of Van Buren Township School District demanded that the Oakwood Village District pay its proportionate share of the indebtedness of the Van Buren District; that the officials of the District were incorrectly advised that the law did not provide for the assumption of the 14.06% of the indebtedness, upon which erroneous information the Board made no further demand, and that the relator did not know of such mistake until the 16th of November, 1936, when a state examiner made and filed a report; that no part of said balance from the Oakwood School District, amounting to $100,525.02 has been paid and that the Board of Education of Oakwood City School District has neglected and refused to pay said indebtedness or to levy a tax, as provided by law, for payment thereof.

The relator seeks a mandatory writ requiring the Board of Education of Oakwood City School District of Montgomery County, Ohio, to levy a tax for the payment of the $100,525.02.

The matter has heretofore been considered by this court, passing upon motions and a general demurrer filed by the respondents. The opinion was rendered by Barnes, PJ, on February 2, 1938. See ante page 367. By the judgment of the court at that time all the

motions and the demurrer were overruled.

Since that action of this court the respondents have filed an amended answer, the substance of which is an admission of certain allegations of the petition in reference to the territorial limitations of the various districts before and after annexaton and the tax valuation thereof and the indebtedness of the Van Buren Rural School District by reason of outstanding bonds and interest thereon.

Respondents deny that the Oakwood Village School District was compelled to assume any portion of the indebtedness or to levy a tax therefor. It is admitted that an examiner of the Bureau of Inspection on the 16th day of November, 1936, made a purported examination of the Rural School District, but deny that said report was made under authority of §274 GC et seq, and deny that it is a correct report. It is asserted that prior to 1936, a state examiner made three separate reports of the financial affairs of the Van Buren Rural School District and also made examinations of the financial affairs of the Oakwood Village School District, afterwards the Oakwood City School District, from 1926 to 1935; that such examinations were made pursuant to the authority of §274 GC, and were full and complete and that no finding was made in reference to the matter involved in this action.

For a second defense respondents allege that a part of the bonded indebtedness of the Van Buren Township Rural School District existing as of July 8, 1926, was issued to fund an operating deficit previously incurred and was not indebtedness incurred for the erection of school buildings or the acquisition of school lands; that on January 1, 1931, there was annexed to the City of Dayton an additional portion of the territory of Van Buren Township, which was also a portion of the territory of the Van Buren Township Rural School District, and that by reason thereof the territory so annexed to the city of Dayton was detached from the Rural School District and became a portion of the Dayton City School District; that certain buildings and lands devoted to school use were located in said territory annexed to the Dayton City School District and that such District thereupon assumed 30.23159% of the indebtedness of the said Van Buren School District as it existed on July 1, 1931; that $151,711.39 of the indebtedness so assumed was a part of the indebtedness of the Van Buren Township School District existing as of July 8, 1926, 14.06% of which latter amount relator has prayed that the respondent be required to assume and pay; that thereupon the City of Dayton commenced to pay and has continued to pay said $151,711.39 of indebtedness as the same has become due.

That the Van Buren Rural School District has heretofore paid and discharged as the same matured 70.768% of its said bonded indebtedness existing July 8, 1926; so that as of April 1, 1939, $71,139.95 of the said indebtedness which relator seeks to have respondent pay had already been paid by the Van Buren Township School District to the holders of its bonds as the same matured and that such part of said indebtedness was thereby discharged.

That the Rural School District collected and still retains installments of school taxes for the year 1926 which became due and payable in December, 1926, and June, 1927, on all the real estate located within the territory which was annexed to the village, amounting to 10.199 mills upon the entire taxable property of said district; that the report of the examiner did not take into consideration nor make credits for any of the facts set forth in the second defense.

As a third defense it is alleged that if the relator has any cause of action as alleged in the petition, the action was not brought within the time limited for the commencement of such action.

As a fourth defense it is stated that the territory next to the village of Oakwood consisted of territory contiguous to the village and that within said territory there were a certain number of

children and there was not within said annexed territory any school property belonging to the Rural School District; that immediately upon the annexation the Oakwood Village School District was compelled to expend sums of money to provide temporary school facilities and it was afterwards compelled to expend $323,890.85 for the construction of a permanent school building to provide facilities for the children residing within the confines of the annexed territory.

As a fifth defense it is asserted that the relator is not entitled to the relief prayed for because if the writ is issued it will require a tax levy by the respondents in excess of and in violation of the constitutional limitations and in excess of the statutory limitations.

As a sixth defense it is asserted that if required to assume the indebtedness as prayed for in the petition the district would have an indebtedness in excess of legal limitations permitted by law.

To this amended answer a reply is filed denying the several defenses except such as are admitted in the petition.

It is admitted that on January 1, 1931, there was annexed to the City of Dayton a portion of the territory from Van Buren Township, which territory was a part of the Van Buren Township Rural School District, and it is averred that an equitable division of the existing indebtedness of the Van Buren Township School District in the amount of 30.23159% was assumed by the Dayton City School District, and that the Dayton City School District has paid and is continuing to pay said indebtedness. It is admitted that the Van Buren Township Rural School District has paid that part of the indebtedness existing on July 8, 1926, as the same became due; that it collected the installments for the year 1926, and avers that all expenses for the operation of the school had been entered into prior to July 8, 1926, and that the school board of the district paid the same.

It is asserted that no statute of limitations is applicable to the relator's claim.

Certain other allegations are made not necessary to detail in reference to advice given by proper officials and relied upon by respondents and not known to be incorrect until the filing of the examiner's report.

It is further stated that respondents retained the annexed territory and have each year levied and collected school taxes and retained the same.

The respondents have made a serious attack upon the entire structure of this proceeding and have presented impressive arguments in support of their claim that the relator should fail. The relator, on the other hand, has met these arguments and asserts, with equal assurance, that it is entitled to the relief prayed for.

The respondents have presented their arguments under eight different "POINTS" some of which "POINTS" are still further sub-divided. The relator has presented the reasons by which they attempt to show the falicy of the respondent's claims, under the same sub-divisions.

Counsel for each side have presented such a flood of authorities to support their respective claims that it will be impossible for this Court to severally discuss each authority. The Court has given careful consideration to all matters presented and even a brief reference to each will result in a lengthy opinion.

## "POINT I"

It is asserted that a mandamus action is not such an action as is authorized to be brought on an audit report pursuant to §286 GC and that the Court has no jurisdiction over the subject matter. It is pointed out that the action is in mandamus predicated upon the authority contained in §286 GC. and that a study of that section will disclose the fact that suits there contemplated are limited to ordinary actions at law to recover public money or property and that there is no provision which authorizes a mandamus action. Inasmuch as the discussion so

largely centers around the mandamus section, we quote it in full.

**Sec. 12283 GC.**

"Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station."

Counsel quotes in part §286 GC, which is a section of the chapter providing for inspection and supervision of public offices, especially relating to the contents of the report to be made by such inspector. Quoting in part, "It is the duty of the officer receiving the certified copy of the report to institute civil actions for a recovery of the money" and counsel uses this quotation as a basis of his claim that the statute confines the subsequent activities of the officer to the recovery of public money.

An examination of the statute discloses the fact that it is broader than the provisions thereof asserted by counsel. The statute provides:

"If the report sets forth that any public money has been illegally expended, or that any public money collected has not been accounted for, **or that any public money due has not been collected,** or that any public property has been converted or misappropriated, the officer receiving such certified copy of such reports * * * may, within ninety days * * * institute or cause to be instituted * * * civil actions * * * in the name of the policital subdivision or taxing district to which such public money is due * * * for the recovery of the same and shall prosecute or cause to be prosecuted the same to final determination."

Counsel assert that since actions under §286 GC are definitely limited to "recovery" of "money or property" such actions are governed by §11379 GC, which provides for jury trials and that the provision of the section for jury trials rules out a mandamus action as such are not triable to a jury. Counsel cites cases which he claims support his position Counsel further asserts that an action authorized by §286 GC must be governed by literal construction and that actions at law, brought in the name of the political subdivision to which money is due, is the only type of action contemplated or authorized by that statute, and that a mandamus proceeding lacks three of the essential elements of the action authorized by §286 GC which he details to the effect, that the mandamus proceeding is one for commanding the performance of an act; that it is not triable by a jury and it not brought in the name of the subdivision, but in the name of the State itself.

Counsel for relator answer the argument under the "First Point" asserting that it is the identical question which was argued and decided when the motions and demurrer were before this Court, and quote at large the opinion of Judge Barnes on page 19 thereof, and cite many authorities which they claim support their contention that mandamus is a proper proceeding authorized by §286 GC.

This Court, speaking through Judge Barnes, in the opinion already alluded to, commenting upon the provisions of the statute, "or that any public money due has not been collected" states "that that part of §286 GC seems to completely answer the argument that this section is limited to money illegally received or held. We hold that the report of the State Examiner comes within the purview of §286 GC."

We see no reason to depart from our former holding in this matter and we [redacted] have examined many cases which confirm our former opinion that mandamus is a proper action, among which we may point out:

**State v Harris, 17 Oh St 608, Syllabus 5.**

**State ex rel v Board of Education, 27 Oh St 96, Syllabus 2.**

**Brissel v State, 87 Oh St 154, at p. 172.**

**State ex Donahey v Roose, 90 Oh St 345, Syllabus 3.**

State ex rel v Huwe, 103 Oh St 546, Syllabus 1 and 3.

State ex King v Sherman, 104 Oh St 317, at p. 324.

State ex rel v Board of Education, 114 Oh St 602, at p. 605.

State ex rel v Bateman, 119 Oh St 475, at p. 478.

State ex Bank v Putnam, 121 Oh St 109, at p. 112.

State ex rel v City of Van Wert, 126 Oh St 78.

We have enumerated the foregoing cases but will not comment upon them at length for the reason that to do so would unduly lengthen the opinion, but we may say that the general tenor of the opinions are that a proceeding in mandamus may be maintained to require a public officer to perform an act which the law especially enjoins as a duty resulting from an office where there is not a plain or adequate remedy in the ordinary course of law; that the fact that a proceeding is, in some respects the enforcement of an obligation under a contract, does not, in and of itself, require that the action must be at law and that the remedy by mandamus is not available; that in school cases where a division has been made by the tribunal empowered by law to make it, the legal duty devolves upon the said board to comply therewith. Upon its refusal, mandamus is not only an appropriate remedy but is the only adequate one; that the only manner in which the obligation of a board can be enforced is by compelling a levy and collection of taxes upon all property within the district and that for this purpose a mandamus proceeding is proper.

An examination of the cases that we have cited will disclose the fact that many of them are very closely related to the case at bar. It is true that few, if any, involve a procedure based upon §286 GC but we are of the opinion that this feature does not prevent the application for mandamus. As pointed out by Judge Barnes, the case of State ex rel v Bateman, 119 Oh St 475, is practically identical with the case at bar, with the exception that it is not

based upon the provisions of §286 GC. We are of the opinion that if we may be mistaken in our view that §286 GC is a firm foundation upon which a case may rest, yet there is sufficient other matter alleged in the petition which would, without reference to §286 GC, confer jurisdiction upon this Court in a mandamus proceeding. This view would eliminate any question of jurisdiction, saving only the question of the statute of limitation. If the action is not properly based upon §286 GC, §286-3 GC would, of course, not apply and the statute of limitation would apply, the proper limitation in this case being six years.

However, at this point it might be well to say that even though the general six year statute applies, it would not preclude the bringing of the action for the reason that the collections are made annually and each separate tax collection would constitute a new cause of action, the result being, if respondents' position is correct, that the relators could bring their action, but could only collect for the past six years.

### "POINT II"

This is based upon the claim that the present action is not a proper action upon the report under §286 GC for the recovery of "public money" because no public money is being held by the Oakwood District belonging to the Van Buren District. We think this point has been amply covered by our discussion of "POINT I". However, counsel cite us to the case of City of Youngstown v Youngstown Municipal Ry. Co., 134 Oh St 308, decided since this Court passed upon the motions and demurrer. After the statement of the case, the Court in passing upon it, points out that there is but one question raised, "Does this action involve public money?" The Court concludes that the circumstances alleged in the petition do not involve public money in the hands of the defendant and that the six year statute applies and that the plaintiff is not permitted to bring its action under favor of §286 GC.

We think this case is easily distinguished from the case at bar. There

was no "public money" involved and consequently §286 GC did not apply and the six year statute of limitations was the one applicable. As we have already pointed out, the matter involved in this case is based upon a report showing that, "any public money due has not been collected". The money involved in this case is certainly "public money" and its collection is sought.

Counsel under "POINT II" also call our attention to the case of **Trustees of Ottawa Township v Ottawa, 4 OO 452.** We do not believe that counsel's conclusions are justified by this case.

### "POINT III"

Under this point, it is asserted that the special report is not such a report as is contemplated by §286 GC, and related sections. Counsel ▮▮▮▮▮▮ point to the fact that under §284 GC, the Bureau of Inspection is required to make an examination of school offices at least once in every two years and that prior to the report filed in 1936, there were three other reports made, as required by §284 GC, before the special examination in 1936, and that these three prior reports made no finding in reference to the subject matter and in none of the three prior reports was there any finding that the Oakwood District owed the Van Buren District anything and that, therefore, the scope of any right or remedy based on §284 GC is limited to the first report filed within two years of the occurrence complained of, and that if this were not so, an examiner might re-open transactions of remote periods and so work an injustice. It is asserted that the elaborate provisions for time and thoroughness provided by the statute clearly imply that but one audit and report, at least biennially, and not re-examinations and successive reports, must be the basis of the action. Counsel cites many cases from other states which may be correct under the statutes there invoked, but which we do not think apply to the statute now under consideration.

If counsel were correct in their assertions, the inspection and supervision of public offices would result in many farces. If the examination be made and the officer in charge was given a clean bill of health by virtue of the fact that the examiner did not discover defalcations existing at the time he made his first report, such officer could plead the failure to discover his defalcation as a complete defense against any default existing at the time, but not discovered until a later date when it was disclosed in a subsequent report. To state such a proposition is to state its condemnation.

### "POINT IV"

It is asserted that the amount claimed is unascertained and admittedly incorrect and a mandamus action is not a proper action in which to have the correct amount determined. Counsel points out facts alleged to be disclosed in the Agreed Statement of Facts, which he asserts render the amounts to be collected uncertain and therefore not subject to a mandamus proceeding. The answer to this is simple. The action does not contemplate the recovery of any sum of money, but does ask that the proper officers be compelled to make a levy and provide for the payment of the sums that may be due. **Sec. 4690 GC** provides that the school district shall assume such indebtedness and shall levy a tax **annually** sufficient to pay such indebtedness and shall pay to the board of education of the district from which such territory was detached the amount of money collected from such levy **as it becomes due.**

It clearly gives to the taxing officers a right, not to exercise their individual judgment as to whether or not it becomes due, but to collect annually an amount sufficient to pay the debt as it becomes due and in the amount in which it does become due.

Judge Barnes on page 16 of his opinion, speaking of another claim to which we will later allude, pertinently says:

"Its claim is that the entire right of action is a predicate for a writ of mandamus. We are not now determining whether or not this position of plain-

**386**

tiff is well grounded. In the final hearing it may be determined that plaintiff is entitled to all the relief sought, or only in part, or not at all."

Counsel for relator call our attention to **State ex rel v Huwe et, 103 Oh St 546**, and **State ex rel v Sherman, 104 Oh St 317**, which we have already cited, and assert that these cases meet the claim asserted by respondents under Sub-division IV. In this, we think they are correct and that those cases successfully meet the respondents' claims.

Counsel for respondents cite many cases which we have examined and while they correctly state the law in reference to the several matters then under discussion, we feel that the array of cases that we have cited under "POINT I" sufficiently demonstrates the fact that counsels' point is not well taken.

### "POINT V"

Under this point, it is asserted that the Oakwood District never was under any duty to assume or pay any portion of the Van Buren indebtedness because there was no school property within the territory transferred.

Counsel examine **§4690 GC** as the governing statute and argue that the only debt that could be collected was that incurred for the construction of school property. We think that this claim is directly answered in **State ex rel v Bateman, 119 Oh St 476**, already alluded to, in which the Court held:

"We are of the opinion that the school property does not mean the school building equipment utilized in conducting schools, but rather all taxable property within district subject to taxation."

We have already quoted from this decision more at large and will not now repeat. The same question was raised upon the argument on the demurrer and Judge Barnes stated, "This question is directly passed on adversely to the demurrant in the case of State ex rel v Bateman". Counsel cite a large number of cases and attempt to distinguish the Bateman case, asserting that it was decided on equitable principles which do not apply to the case at bar. We fail to follow counsel in this attempt.

### "POINT VI"

It is asserted that the action is barred by the statute of limitations.

It is pointed out that a mandamus action is subject to the statute of limitations and that the defense of that statute is available against the relator even though public school funds are claimed to be owing to the relator, citing **State ex rel v Gibson, 130 Oh St 318.** Counsel claim that that case is authority to the effect that **§11222 GC**, the six year statute, would apply.

Counsel for respondent point out that relator's attempt to avoid the effect of the statute by three claims:

(1) That under **§286-3 GC**, the statute, if otherwise applicable, does not begin to run until the report was filed on November 16, 1936.

(2) That if such section does not apply, the statute does not begin to run until the district provides a fund out of which the relator's claim can be paid.

(3) That the obligation is a continuing trust and is exempt from any statute of limitations.

Counsel for respondents file elaborate citations of authority, including those from Ohio, to support their claim that there is no basis for relator's claim and that the six year statute applies and that it began to run at the time of the transfer of the property.

Counsel for relator cite many cases in support of the three claimed defenses to the running of the statute.

We have read the cases of both sides with interest and are yet in some uncertainty as how to decide this particular point. We have, however, arrived at the conclusion that if the action is properly based upon the provisions of **§286 GC**, that then **§286-3 GC** furnishes the exclusive rule as to the running of the statute and that, therefore, it is not necessary for us to de-

termine whether or not the claim that the debt does not begin to run until a fund has been provided out of which the claim may be paid or that the fund sought to be appropriated is a result of a continuing trust, in that it is to be paid not at a fixed period but in annual payments "as it becomes due". Judge Barnes in passing upon the demurrer did not find it necessary to ultimately determine the effect of the statute of limitations upon the various installments that might become due, for the reason, in brief, that. if any sum was due the demurrer would not be good. Judge Barnes cites, with comments, **State ex rel Campbell v Ballard, 8 Oh Ap 44,** stating however, that it was not then necessary to determine whether or not the Court will follow the Hamilton County case in its entirety.

Speaking of the date, July, 1926, when the territory was annexed. Judge Barnes observed that by operation of law the amount was assumed by the Oakwood Village School District as of that date, but the date and time of payment would be the time when the indebtedness would fall due, and after calling attention to §4690 GC he states, "that the statute of limitations will be applicable to certain portions of the past due installments is apparent, if the reported case of State ex rel Board of Education v Gibson is applicable", and he observes that whether or not it is controlling depends upon the provisions of §286-3 GC.

We have definitely arrived at the conclusion that §286-3 GC controls the running of the statute and shall proceed upon that theory, reserving our further analysis until we have reached a determination of that defense as set up in the answer.

Counsel for respondents also assert and cite cases to support their position that laches is not an available defense as against the statute of limitations. We think they are correct in this matter, but also are of the opinion that the question is moot so far as this case is concerned if we date the running of the statute in accordance with §286-3, to-wit, November 16, 1936.

## "POINT VII"

It is asserted that mandamus can only act propectively and it can not require some act to be done which the law required to be done annually during the past twelve years, and it can not require the payment of indebtedness which has heretofore been paid. It is asserted that a writ of mandamus can not be issued to require the Oakwood District to assume and pay that part of the $100,525.02 of the Van Buren indebtedness amounting to $71,139.95, which as of April 2, 1939, no longer exists because it has actually been paid and discharged. It is asserted that it may be that after giving due credit for the amount assumed and paid by the Dayton District and for the more than $26,000 which the Van Buren District collected from the transferred property in 1937, the Van Buren District would have a claim of some undetermined amount against the Oakwood District for the amounts paid by the Van Buren District on account of the obligation of the Oakwood District to discharge the indebtedness. Counsel cite cases to the effect that mandamus can not lie to require the assumption and payment of indebtedness that no longer exists and that the writ acts prospectively and can not be used to require something to be done after the time for doing it has passed and it is pointed out that the liability under §4690 GC was to levy a tax annually during twelve years which have passed, and it is asserted that the writ can not thus operate retroactively and a large number of cases are cited to support this viewpoint and counsel further point to **Art. XII, Sec. 5 of the Constitution** which provides that no tax shall be levied except in pursuance of law and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied, and it is claimed that under §4690 GC, the object of the tax involved in this case is to pay such indebtedness and that if, under the Constitutional provisions, it would be necessary to levy a special tax where such indebtedness has been paid, the writ would operate retrospectively.

388

In answer to respondents' "POINT VII" relator states that it is not asking respondents to act retrospectively. It is asking that a tax be levied in the future, that is, propectively. They assert that the law of Ohio is to effect that officials may be compelled to levy a tax even after they have failed to perform the duty at the time fixed by statute for its performance. They cite a number of cases, one being **State ex rel v Board of County Commissioners, 35 Oh St 458**, wherein Okey, J. says on page 468:

"* * * nor are the commissioners exonerated from levying the tax now, on the ground that they failed to perform the duty in June, 1877, as required by the statute. **State v Harris, 17 Oh St 608**.

"We are satisfied that here was a duty specially enjoined by law on the county commissioners, which it was their duty to perform, but which they have failed to perform."

Counsel for relator also cite State v Harris, alluded to by Judge Okey, which we will comment upon later; also **State ex rel v Roose, 96 Oh St 345**, wherein Donahue, J. says on page 330:

"The placing of this levy on the tax duplicate is a mere ministerial duty. In the discharge of this duty the county auditor has no discretion. If he did not perform this official duty within the time the law directed him to do it, he must do it now."

They also point to **State ex rel v Putnam, 121 Oh St 109**, wherein the Village of Jefferson had outstanding notes for which a levy should have been made. The Village refused to make the levy and the Huntington National Bank brought an action in mandamus to require a levy to be made. In that case Matthias, J. stated, in substance, that upon the issuance and sale of the notes, an obligation rested upon the officers to make provision for the payment and this was the duty of the authorities and that a writ of mandamus may be issued requiring the performance of an act which the law specially enjoins as an official duty. Judge Matthias alludes to the case of **Robertson v Board of Education, 27 Oh St 96**, and states that the principles there announced have been applied in subsequent cases. Counsel for relator also cites **State v Commissioners, 124 Oh St 174**.

Counsel further state that in the case at bar, it is admitted that the bonds were valid and that there was a continuing duty resting upon the respondents to make the levy and until that was done their duty was not completed. Counsel for relator claims that the case at bar is similar to that of **State ex rel v Board of Education, 113 Oh St 466**, which is quoted from at length and is too long for further reference and counsel claim to differentiate the cases cited by respondents from the facts at bar.

Of the cases cited, all of which we have read, we are most attracted by that of **State of Ohio v Harris, 17 Oh St 608**, wherein White, J. in his usually clear and concise statement announces certain principals claimed to be applicable and to have been followed by later decisions. In that case there was an act of 1866 to provide for payment of soldiers' bounties and the Court held that the performance and the duty enjoined by the act on the commissioners to levy the tax is not limited to the year 1866. In requiring the tax to be levied and the bonuses to be paid the act is imperative. In prescribing the time within which the levy is to be made it is directory; and the neglect of the commissioners to levy a tax within the time required will not deprive the soldiers of the bounty and that mandamus was a proper remedy to be resorted to.

We are clear upon the propostion that if the bonds that were issued **had not been paid** as they fell due, that there would be an obligation upon the part of the proper officials to levy taxes to pay the bonds, but the case at bar is distinguished from all the cases cited in that it appears that the bonds have all been paid as they fell due. It is true they were paid largely by Van Buren School District without any aid from the Oakwood District.

By the Agreed Statement of Facts, Paragraph 30, it appears that of the $100,525.02 of the indebtedness of the Van Buren Township Rural School District which the relator's petition prays that the Oakwood City School District shall be required to assume and pay, $65,544.36 is principal of the bonds and $34,980.66 is for interest accruing subsequent to July 8, 1926; that of said amount of $100,525.02 principal and interest have been paid to the holders of the bonds by the Van Buren Township Rural School District between July 8, 1926, and April 1, 1939, in a total sum of $71,139.95 and that the amount of principal and interest, forming a part of said bond obligation are payable between April 2, 1939 and October 1, 1950, in a total amount of $29,385.07.

The mandamus statute provides that a writ may issue commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station.

The question then is whether or not there is a duty incumbent upon the Board of Oakwood School District to levy a tax to pay the $71,139.95 which has already been paid by the Van Buren Township Rural School District through a misapprehension of what the law required it to do. We arrive at the conclusion that while the bonds have been paid, and to that extent the conditions differ from those involved in the cases which we have cited, the Oakwood School District can not avoid the obligation imposed upon it by statute when it took over a certain portion of the school district formerly under control of the Van Buren Board. To permit this would be to permit a defaulting or negligent board to escape an obligation originally imposed upon it by statute, but which it through neglect or misapprehension has failed to discharge. To the extent that the Van Buren School District has paid the obligation of the bonds, to that extent the Oakwood District has escaped its legal obligation and we, therefore, arrive at the conclusion that mandamus is an appropriate remedy to compel the Oak-wood District to raise the money by taxation to discharge the obligation which was originally imposed upon it.

"POINT VIII"

This point is to the effect that the relief prayed for can not be granted nor can the writ issue because it would require a tax levy in excess of the Constitutional Limitation and would require an increase in the unvoted debt beyond that permitted by law. We will later take up this matter when we examine the defense asserted in the answer, but we have arrived at the conclusion that the matters there stated do not constitute a good defense and we will give our reasons later. This position was taken by this Court in the opinion announced by Judge Barnes.

STATUTE OF LIMITATION

This still leaves open for consideration the claim of the respondents that the Statute of Limitations runs against any sum that was due and should have been collected as taxes upon the property of the Oakwood School District for the years more than six years prior to the filing of the examiner's report.

On this point we arrive at the conclusion that the Statute of Limitations provided by §286-3 GC, is broad enough to cover the amounts that were due, but not paid, for the period of more than six years prior to the filing of the report.

AGREED STATEMENT OF FACTS

Counsel have filed an Agreed Statement of Facts covering 36 separate paragraphs, many of which have reference to appended reports. While counsel have agreed that the facts stated in the 36 paragraphs are true, they offer them to the Court with certain reservations, under heading substantially as follows: The Parties Agree that the Following Facts and Paragraphs, Number from One to Ten, are True.

After the recitation of the first ten paragraphs which are offered to the Court, it is stated that, "The Parties

Further Stipulate and Agree that the Facts in Paragraphs from Eleven to Eighteen inclusive are True", but the respondents contend that all are incompetent and immaterial to the issues and they object to the admission thereof into the record. It is also agreed that the Court shall be requested to pass upon the admissibility of the paragraphs, or parts thereof, and that the respective parties shall be given an opportunity to be heard thereon and to reserve exceptions to the ruling of the Court. Then follows the recitation of paragraphs from eleven to eighteen.

The parties thereupon further stipulate, "That the Facts in Paragraphs Numbered from Nineteen to Thirty-Six are True", but relator contends that they are incompetent and immaterial to the issues of the case and object to their admission and it is agreed by the parties that the Court should be requested to pass upon the admissibility of each of the facts in the several paragraphs and that the respective parties shall be given an opportunity to be heard and to reserve exceptions.

## THE QUESTIONS INVOLVED

We proceed to the questions involved in the pleadings under the Agreed Statement of Facts and for sake of continuity will follow the briefs of the relator on facts and law, so far. as they furnish us a proper guide, reserving the right to depart from the order as our own convenience may dictate. Much that we shall now say may seem a repetition of what we have already said, and this is true, in part, but seems necessary to preserve proper continuity.

Sec. 4690 GC et seq., relate to the transfer from and annexation to school districts of certain territory.

Sec. 4690 GC was under consideration by the Supreme Court in the case of State ex rel v Bateman, 119 Oh St 475, where the Court said:

"1. In the construction of §4690 GC, the expression 'any indebtedness on the school property in the territory annexed' shall be held to mean such indebtedness as, in the ordinary course of the administration of school affairs in the original district by which the indebtedness has been incurred, would have been paid by the levy and collection of taxes upon the taxable property in the territory annexed."

"2. In applying that statute to a case where territory has been detached from one school district and annexed to another, where the original district from which territory is detached has outstanding indebtedness, the district to which such territory is annexed shall be held to pay such proportion or such indebtedness as the tax valuation of the territory detached bears to the tax valuation of the property remaining."

Marshall, CJ., delivered the opinion of the Court. It is stated on page 480 that the equitable method of apportioning the indebtedness would be a division in the proportion that the taxable value of the transferred district bears to the taxable value of the original district and that this would be the only basis upon which an equitable division could be made.

This statute as it is so interpreted furnishes the formula for determining the amount that shall be paid by one district to another when detachment and annexation has taken place. We believe that the figures set up in the petition, and agreed to, have followed this decision and we need, therefore, give no further present attention to the amounts.

Under this rule, when 14.06% of the tax duplicate was attached to the Oakwood City School District, it became obligated to pay that per cent of the indebtedness of the Van Buren Township Rural School District, which the petition alleges to be $100,525.02. This Court, in its former hearing, held that when the annexation has been made §4690 GC fixes the liability.

Counsel next discusses the first and third defense of the respondent. We have largely treated this matter in the discussion of the appropriate points.

Sec. 286-3 GC, provides:

"No cause of action on any matter set forth in any report made under au-

thority and direction of §286 GC, shall be deemed to have accrued until such report is filed with the officer or legal counsel whose duty it is to institute civil actions for the enforcement thereof, **and all statutes of limitations otherwise applicable thereto shall not begin to run until the date of such filing."**

That the appropriate statute may run against a school board is held in the case of **State ex rel v Gibson, 130 Oh St. 318,** where it is decided that the immunity attaching to the state does not accrue to the benefit of a board of education; and that when a statute does not expressly exempt a subordinate political subdivision from its operation the exemption therefrom does not exist.

That §286-3 GC controls in the instant case is demonstrated in **State ex rel Campbell v Ballard, 8 Oh Ap 44.**

As to counsel's discussion "Advice of Counsel", we dismiss it simply with the assertion that the statute controls and it does not make any difference whether there was sound or unsound advice and that ignorance of the law does not toll the statute. Lisle v U. S., 23 U. S. Circuit Court 270; **Fee, Admr. v Fee, 10 Ohio 469; 25 O. Jur. 597.**

In the second defense, relator alleges that a part of the bonded indebtedness of the Van Buren Township School District was issued as of July 8, 1926, to fund an operating deficit which previously existed and to that extent the indebtedness was not that incurred for the erection or procurement of the school building or other property devoted to school uses.

We see nothing in this paragraph of the second defense. It does not make any difference what was the foundation of the bonds issued. They were issued and outstanding bonds, a debt which the Van Buren Township was under obligation to pay when the same came due.

The fourth defense is to the effect that in the territory annexed to the Village of Oakwood there were a certain number of school children which necessitated the erection of a school building for their accommodation. We do not regard this defense as of any value. The

obligation to pay is fixed at the time of the annexation and the amount is to be then determined subject to such modification or diminution as may arise from other sources of revenue. This view, we think, is supported in **State ex rel v Bateman, 119 Oh St 475.**

The first and sixth defenses are treated together, the fifth being to the effect that the relator is not entitled to the relief prayed for because if the writ is issued it will require a tax levy in excess of and in violation of constitutional and statutory limitations and an indebtedness in excess of the statutory limitation. We do not think that either of these defenses are good for the reason that the money sought to be secured is to be used for the payment of primary obligations of the district, the payment of which can not be postponed on any of the grounds asserted. This position, we believe, is supported by **State ex Bruml v Village of Brooklyn, 126 Oh St 459,** wherein many of the cases touching upon this question are cited and reviewed by Day, J., delivering the opinion of the Court. That case is so well considered that we feel that justice can not be done to it by mere analysis of its conclusions. We also are of opinion that this Court, on the former hearing of this case, definitely passed upon the question in a clear analysis of the situation by Judge Barnes.

## DAYTON

We return to the more difficult question which arises from the allegation of the second defense of the amended answer and the Agreed Statement of Facts which sustain it, in reference to Dayton. It is alleged that, as of January 1, 1934, there was annexed to the City of Dayton, Ohio, an **additional** portion of the territory of the Van Buren Township, which was a portion of the territory of the Township Rural School District and that by reason thereof, said territory so annexed to the City of Dayton was detached from the Van Buren School District and became a part of the territory of the Dayton School District; that certain buildings were located in said territory so annexed to

Dayton and the Dayton District thereupon assumed 30.23159% of the indebtedness of the Van Buren School District as it existed on January 1, 1931, and that $151,711.39 of the indebtedness so assumed by the Dayton School District was a part of the $714,971.69 indebtedness of the Van Buren School District existing on July 8, 1926, 14.06% of which latter amount the relator now prays that the respondents be required to assume and pay and that thereupon the City of Dayton commenced to pay and has continued to pay the said $151,711.39 of the indebtedness as the same has become due and payable; that the said Van Buren School District has heretofore paid, as the same matured, approximately 70.768% of its bonded indebtedness of $714,971.69 existing as of July 6, 1926, and that on April 1, 1939, $71,139.95 of the said $100,525.02 of indebtedness which the relator now seeks to have respondents pay has already been paid to the holders of its bonds. It is further asserted that the Van Buren Township Rural School District collects and still retains the installments of school taxes for the year 1926, which became due and payable in December, 1926, and June, 1927, on all of the real estate located within the territory which was annexed to the Oakwood Village School District. It is asserted that the report of the examiner does not, and did not, take into consideration or make any credits for any of the facts set forth in the second defense.

In the reply to the Amended Answer, it is admitted that there was annexed to the City of Dayton a portion of territory from Van Buren Township, which territory was also a part of the Van Buren Township, Rural School District and which territory, when annexed to Dayton, became a part of the Dayton School District and relator avers that an equitable division of the then existing indebtedness of the Van Buren Twp. Rural School Dist. in the amount of 30.23159% thereof was assumed by the Dayton School District and that that district has paid and is continuing to pay on said indebtedness, as the same becomes due and payable, the amount

so assumed and that the Van Buren Township School District has paid that part of its indebtedness which existed on July 8, 1926, as the same became due and payable.

Relator further admits that it collected and retained installments of taxes for the year 1926 and avers that all the contracts for teachers, etc., of the Van Buren Township Rural School District for the year 1926-1927 had been entered into prior to July 8, 1926, and that said Van Buren Township School District paid the obligations arising under all of said contracts.

Summarizing the pleading and agreements as to Dayton they are to the effect that in 1931 the Dayton School District annexed certain territory of the Van Buren School District taking none from the Oakwood School District; that the indebtedness assumed by the Dayton School District amounted to 30 plus per cent of the then outstanding obligation of the Van Buren School District and that Dayton has paid and has continued to pay that amount, thus relieving the Van Buren School District to that extent, amounting approximately to $150,000.00.

This gives rise to the question whether the amount of indebtedness which was allocated to the Oakwood School District as its proportionate share of the then outstanding bond obligation of the Van Buren School District should be credited with the amount that was produced by subsequent annexation of a part of the Van Buren School District territory to the City of Dayton, it thereafter assuming and paying 30 per cent plus of the remaining tax obligation of the Van Buren School District.

This matter may be looked at in two ways: First, that the obligation imposed upon Oakwood was to pay 14.06% of the outstanding bonded obligation of Van Buren School District as of 1926, and that this transaction being completed, we are not now concerned with what happened at a subsequent date in reference to annexation of the territory by the Dayton School District and the assumption of a part of the outstanding obligation of Van Buren Township; that this is a matter between Van

Buren Township School District and the City of Dayton and is no concern of the City of Oakwood.

A second way to look at it is that Van Buren Township had taken from it in 1926 certain territory annexed to Oakwood, which obligated Oakwood to pay 14.06% of its outstanding obligation and that in 1931 it lost an additional and different portion of its territory to the City of Dayton which thereupon assumed and agreed to pay 30 plus per cent of the then outstanding bonds of Van Buren Township and that Oakwood has a vital interest in what is being paid by Dayton on an obligation that was formerly entirely that of Oakwood by reason of its annexation of Van Buren territory.

After careful consideration, we have arrived at the conclusion that the annexation of a certain territory in Van Buren Township by Dayton does not effect or diminish the obligation that was assumed by Oakwood when that village annexed a part of the Van Buren School District and then became obligated to pay 14.06% of the outstanding obligation of the township, amounting to $100,525.02. That obligation continued and will continue, until the final payment of the bonds, to be a burden upon Oakwood by reason of its annexation of the territory of Van Buren Township. The payment by Dayton of 30% plus of this outstanding obligation by reason of its subsequent annexation of Van Buren territory has nothing to do with and does not diminish the obligation originally attaching to Van Buren Township. Dayton simply assumes to pay its proportion of the outstanding obligation, based upon the amount of territory it annexed from the Van Buren School District. That does not diminish the proportion to be paid by Oakwood. There are now three public bodies contributing to the payment of the original debt, to-wit, Van Buren Township Rural School District, Oakwood Village (now city) and Dayton. The obligation of each to pay depends upon their separate obligation and when each has paid its portion of the original out-

standing bonded debt, the total contribution will have discharged 100% of the debt, and no more.

This view is not without some uncertainty and we would appreciate it if counsel could agree that the Bureau of Inspection and Supervision of Public Offices would make an examination on this point and give us the benefit of their greater experience in such matters It is an accounting problem rather than a legal one.

The allegation of the amended answer that the Van Buren Rural School District collected and still retains the installment of school taxes of the year 1926 seems to have been neglected in argument of counsel so far as we can find. If Van Buren School District, in 1926, collected a portion of the tax which should have been allocated to Oakwood School District, some credit should be given Oakwood by virtue of this collection, as Van Buren Township was not then entitled to 100% of the tax collection but only to the amount due upon the property remaining in its district after Oakwood had annexed a portion of its territory and was thereby entitled to collect its taxes. This matter is likewise more of an accounting than a legal proposition and what we have said about the examination by the Bureau of Inspection and Supervision of Public Offices of the other matter applies equally to this.

We therefore hold: Upon the annexation of the territory belonging to Van Buren School District in 1926 by Oakwood, that Oakwood was obligated to pay 14.06% of the existing indebtedness or as it was then computed, $100,-525.02; that the right to collect this amount accrued upon the filing of the examiner's report; that the collection was not barred by any statute of limitation; that Van Buren Township School District had a right to collect that portion of the obligation of Oakwood which had been paid by Van Buren Township under a misapprehension of the law; that this obligation of Oakwood may be enforced by proper mandamus proceedings; that if Van Buren Township, in 1926-1927, received on its tax duplicate any of the taxes then

due to Oakwood by virtue of its annexation of the Van Buren territory that Oakwood should have a proper credit due to such collection of taxes by the Van Buren territory, which should have been collected on the territory then annexed to Oakwood; that the amount paid by Dayton does not alter the original obligation of Oakwood.

Judgment accordingly.

HORNBECK, PJ., concurs.

BARNES, J., concurs in judgment.

STATE ex VAN BUREN TWP. BD. OF ED. v OAKWOOD BD. OF ED.

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1467. Decided June 7, 1940.

## OPINION

BY THE COURT:

In this case both relator and respondents have filed their respective bills of exceptions, which appear to be substantially identical. The only discoverable difference is a page upon the respondents' bill of exceptions just prior to the certificate of the court stenographer, setting forth an entry made April 23, 1940, and a recitation of a disposition by the court of two motions, filed by the relator. There may be other differences, but we have been unable to detect them.

Each has filed objections to the bill of exceptions of the opposite party.

The relator on May 31st filed objections to the bill of exceptions filed by the respondents and a motion to strike the bill from the files. The grounds of the motion are in substance, (1) That the respondents did not within three days of the decision in this case, or at any other time, file a motion for new trial, (2) That the bill does not comply with the requirements of law, (3) That the respondents under the law are not entitled to file said bill, not having filed said motion for a new trial and said bill of exceptions not being in compliance with the law.

In support of this relator has filed a brief, most of which is devoted to the claim that the bill should be stricken for the reason that respondents had never filed a motion for new trial and that, therefore, it had no right to file a bill of exceptions.

The Chapter on Bills of Exceptions is covered by §11559, et seq.

Sec. 11562 GC provides that the objection made in the lower court and the ruling thereon must be stated with the facts or so much of the evidence as is necessary to explain it and no more, and the whole as briefly as possible.

Sec. 11564 GC provides for the filing of the bill of exceptions.

Sec. 11566 GC points out the duty of the trial judge in reference to the bill.

Sec. 11571 GC provides that the signature of the judge may be dispensed with by agreement of the parties that the bill is a true bill and shall be so filed without the signature of the judge. It further provides that in cases tried in courts of record, the certificate of the official court reporter attached to the transcript shall be sufficient verification of the bill and the signature of the judge shall not be necessary unless within ten days the adverse party file objection or amendment to such bill, in which case the bill shall be submitted to the court for settlement. A bill of exceptions shall not be necessary in a case in which the entry of judgment shows that the case was tried on an agreed statement of facts and such agreed statement of facts was filed with the party in the case.

We find no where within the limits of the statute any pertinent reference to a motion for new trial that would indicate that it is a prerequisite to the filing of a bill of exceptions. It may be that inasmuch as there was no motion for new trial filed in this Court by the respondents that the Supreme Court will not consider the evidence which is embodied in their bill of exceptions. That, however, is not for this Court, but for the Court to which the appeal is taken. This Court has nothing to do except to follow the statute with reference to filing with it of the bill. Whether or not the evidence will be accepted

in the Supreme Court is for its determination and to it belongs the right to determine whether in this particular case a motion for a new trial is a prerequisite to the appeal. We are clearly of the opinion that it is not a prerequisite to the right to file a bill of exceptions, which is only one step toward an effective appeal.

We are, therefore, of the opinion that the first ground is not sustained. The second is to the effect that the bill does not comply with the requirements of law. Nothing is pointed out to us wherein it does not so comply with the exception of the alleged defect in that there was no motion for new trial filed.

The third objection is to the same effect. We are therefore, of the opinion that the objections to the respondents' bill and motion to strike should be overruled.

We next take up the respondents' objections to the relator's bill of exceptions. This is to the effect (1) The ruling of this Court on the paragraphs of the agreed statement of facts do not appear in the bill of exceptions, that is, in the relator's bill of exceptions, (2) That the bill makes no record of the order of April 23rd and (3) That the respondents' exceptions were not shown.

It is submitted that the exceptions of the relator be revised to include the matter set out.

We think counsel for respondents misapprehend the purpose of a bill of exceptions. It is not contemplated that an order of the court, as evidenced by its entry, is to be incorporated in the bill of exceptions. The transcript of the docket and journal entries is filed with the original papers and this discloses what the court did and the exceptions of the respondents to the action of the court there will be before the reviewing court. However, the lack of the entry complained of is supplied by the respondents' bill of exceptions to which no objection was made by the relator.

We are therefore of the opinion that respondents' objections to relator's bill of exceptions is not well taken and the same is overruled.

We have examined both bills of exceptions and can see no objection to either. Each sets out all the proffered evidence and recites that the first ten stipulations were the Agreed Statement of Facts and that the following stipulations were proffered by the respective parties under the exceptions and that all were admitted. The certificate of the court stenographer definitely sets out the condition under which all the stipulations were admitted.

The case was submitted under this agreement, "By agreement of the parties hereto it is stipulated that this cause shall be submitted to the Court of Appeals on the following stipulation or Agreed Statement of Facts subject to the objections therein reserved by the respondents to Paragraphs 11 to 18 inclusive and subject to objections therein reserved by relator to Paragraphs 19 to 36 inclusive."

An entry of the Court recites that the cause came on for hearing on the admission of the evidence contained in the stipulation, and find that all 36 paragraphs of said stipulation shall be and the same are admitted as evidence in this case.

The Court is of the opinion that both bills of exceptions are properly filed and properly before the Court. The several motions of both parties are overruled.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.